**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 13-cv-61041-DIMITROULEAS/SNOW**

**COTTAGE INTERNATIONAL DEVELOPMENT GROUP, LLC**

**Plaintiff,**

**v.**

**BUENA VISTA CORPORATION; ROHAN KULDIP; WILLIAM J. SCHWARTZ; SHAM MAHARJ; GREGG J. POMEROY & ASSOCIATES, P.A.; GREGG J. POMEROY; ALAN B. TAYLOR & ASSOCIATES, P.A.; and ALAN B. TAYLOR,**

**Defendants.**
**______________________________________________/**

**MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW OF DEFENDANTS ALAN B. TAYLOR & ASSOCIATES, P.A. AND ALAN B. TAYLOR**

The Defendants Alan B. Taylor & Associates, P.A. and Alan B. Taylor (the "Taylor Defendants"), through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1(a), submit their Motion to Dismiss Third Amended Complaint (the "TAC") of Plaintiff Cottage International Development Group, LLC ("Cottage") and Incorporated Memorandum of Law. Cottage's TAC fails to state claims against the Taylor Defendants on its face in light of applicable Supreme Court pleading standards and governing law. For these reasons, the Court should dismiss these counts of the TAC against them.

## I. Legal Standards For A Motion To Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the

pleading standard articulated in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to the plaintiff and take the factual allegations stated therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Erikson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950; *see also Sinaltrainal v.Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for the purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all of the facts upon which it bases its claim. Fed. R. Civ. P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n. 3. The plaintiff's "obligation to provide the grounds of its entitlement to relief requires more than label and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* at 555. A complaint must contain direct inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Financial Security Assur., Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1262 (11th Cir. 2006).

**II. The TAC's Allegations Against The Taylor Defendants**

Cottage's TAC states quite serious claims against the other defendants, but only sues the Taylor Defendants (a law firm and its sole owner) for declaratory relief (Count X), negligence (Count XI), breach of fiduciary duty (Count XIV), fraudulent transfer (Count XV), and constructive trust (Count XVII). Cottage's allegations against or pertaining to the claims it makes against the Taylor Defendants in its allegations common to all counts are as follows:

> The Taylor Law Firm is a professional association organized under the laws of Florida, with its principal place of business in Orlando, Florida. Alan B. Taylor is the Taylor Law Firm's sole officer and director. TAC at ¶ 10.
>
> Cottage entered into a Letter of Intent dated November 2, 2012 with [Defendant Buena Vista Corporation ("BVC")] ("Letter of Intent") ( Ex. 1). Pursuant to the Letter of Intent, BVC (the "Seller") agreed to negotiate and execute a purchase and sale agreement to sell Cottage a hotel-casino, The Trump Plaza Tower East ("Trump Plaza" or the "Hotel"), located in Atlantic City, New Jersey, on specific terms and conditions. TAC at ¶ 14, Exhibit 1.
>
> The Letter of Intent required Cottage to make a $1 million deposit to [Defendant] the Pomeroy Law Firm. (Ex. 1 at p. 3). TAC at ¶ 17.
>
> Cottage then discovered that BVC did not own the Trump Plaza, nor did it have any enforceable agreement with the owner (Trump Plaza Associates, LLC) to purchase it. TAC at ¶ 21.
>
> At this point, Cottage confronted BVC about its having no legal right to acquire the property and convey it to Cottage. In response, BVC sent Cottage a separate non-binding letter of intent that it had with the owner of the property, Trump Plaza Associates, LLC, a subsidiary of Trump Entertainment Resorts, Inc. (collectively, "Trump Entertainment"). A copy of Trump Entertainment's letter of intent is attached as Ex. 2. TAC at ¶ 22, Exhibit 2.
>
> On January 17, 2013, Cottage's attorney, on behalf of Cottage, sent a letter to the Pomeroy Law Firm advising it that Cottage formally "terminates and withdraws" from the Letter of Intent and the proposed transaction, and demanding the "immediate" return

of Cottage's Escrow Funds. (Ex. 3). Despite Cottage's demand, BVC and the Pomeroy Law Firm refused to return Cottage's funds. TAC at ¶ 23, Exhibit 3.

On April 18, 2013, another attorney representing Cottage called [Defendant] Pomeroy, again to demand the return of the Escrow Funds. Pomeroy took the position that there was no "clear escrow agreement" and revealed—for the first time—that he had transferred the Escrow Funds on March 22, 2013 to another one of BVC's attorney's law firms, the Taylor Law Firm. TAC at ¶ 32.

After this lawsuit was filed, Taylor acknowledged to Cottage's undersigned counsel that on March 22, 2013 the Taylor Law Firm received a wire in the amount of $799,956.50 of Escrow Funds from the Pomeroy Law Firm. Taylor advised Cottage's undersigned counsel by letter dated May 20, 2013 that he disbursed all of the Escrow Funds on March 25, 2013, April 12, 2013, April 19, 2013 (unsuccessful wire) and April 22, 2013 (re-sent wire), including $576,956.50 to his client, BVC and $10,000 to his own firm (the Taylor Law Firm). TAC at ¶ 34.

The Taylor Law Firm and Taylor were in possession of Trump Entertainment's expired letter of intent [Exhibit 2 to TAC] with BVC before they disbursed the Escrow Funds, demonstrating that they knew, or should have known, that the $800,000 transferred to him by Pomeroy from Pomeroy's Trust Account were Escrow Funds held pursuant to the Letter of Intent. TAC at ¶ 36(d).

A confidential relationship existed between Cottage and Defendants BVC, the Pomeroy Law Firm, Pomeroy, the Taylor Law Firm, and Taylor, and those Defendants breached their express and implied promises to hold the Escrow Funds. TAC at ¶ 39.

On the face of these very allegations, Cottage did not know who the Taylor Defendants were until April 18, 2013, TAC at ¶ 32, and the Taylor Defendants had no knowledge or anything in their possession prior to having disbursed all of the funds by April 22, 2013 that referenced or even mentioned Cottage, the sums Cottage escrowed with the Pomeroy Law Firm, or any escrow arrangement pertaining to anyone. All Cottage alleges the Taylor Defendants knew of or possessed was Exhibit 2. Exhibit 2 makes no reference to Cottage in any way, or any of the Escrow Funds *or* Exhibit 1. By Cottage's own allegation, Exhibit 2 is a "non-binding" letter of intent between BVC and Trump Entertainment. Cottage alleges that the Taylor Defendants knew or should have known of the existence of *both* Cottage *and* the escrow arrangement in Exhibit 1 based on the Taylor Defendants' knowledge and possession of Exhibit 2. But this is implausible on its face, and is accordingly contrary to the pleading requirements of

*Twombly* and *Iqbad* to be entitled to any presumption of truth to withstand a Rule 12(b)(6) motion. As a result, Cottage's "knew or should have known" allegations against the Taylor Defendants as to Cottage's existence, the Escrow Funds or Exhibit 1 amount to nothing but a baseless conclusion which is not entitled to any weight or presumption of truth.

The *facts* which Cottage actually alleges belie the truth of that statement or any reasonable inference therefrom that Cottage enjoyed a "confidential relationship" with the Taylor Defendants and that they breached their "express and implied promises to hold the Escrow Funds." With no factual allegations to support knowledge of Cottage or the escrow arrangement in Exhibit 1 on behalf of the Taylor Defendants, and no plausible inference from what is alleged to support these allegations, the "confidential relationship" allegation and the "express and implied promises" allegations are nothing but baseless legal conclusions entitled to no weight or presumption of truth under *Twombly* or *Iqbad*.

**III. Specific Counts the Court Should Dismiss against the Taylor Defendants.**

After the above-quoted allegations in the general allegations section, Cottage's TAC moves on to specific counts, which are set forth below.

Count X - Declaratory Judgment

Cottage bases this count on the above allegations and that "Pomeroy, the Pomeroy Law Firm, the Taylor Law Firm, and BVC were all required to hold the Escrow Funds pursuant to the terms and conditions of the Letter of Intent, and return to Cottage." TAC at ¶ 93. Cottages adds that: "[t]he Taylor Law Firm refused to return Cottage's New Jersey's counsel's calls in April of 2013 inquiring of the status of the Escrow Funds." *Id.* at ¶ 94. This is the extent of Cottage's allegations against the Taylor Defendants on its declaratory relief count.

Cottage makes no allegation that the Taylor Law Firm knew of or possessed the Letter of Intent (Exhibit 1), or was aware of any escrow arrangement with *anyone* much less with Cottage

relating to its funds. Cottage *only* alleges that the Taylor Defendants possessed Exhibit 2 to the TAC which mentions neither Cottage, nor the Escrowed Funds, nor any sum of money that pertains to the Escrowed Funds or any escrow arrangement of any kind. The Taylor Law Firm cannot be bound by the terms of the Letter of Intent in Exhibit 1 when it is not alleged to have been a party thereof, had any knowledge of it, or alleged to have even seen. And the allegations are still non-existent that the Taylor Defendants even knew who Cottage was except that one of its lawyers had left phone messages inquiring about the funds. The Court should not afford any weight to Cottage's allegations that possession of Exhibit 2 caused the Taylor Defendants to know or should have know of Cottage's existence, Exhibit 1, or the Escrow Funds or any escrow arrangement at all because the contents of Exhibit 2 makes those allegations entirely implausible. This count utterly fails and must be dismissed.

<u>Count XI - Negligence</u>

Cottage's negligence count against the Taylor Defendants is based upon Cottage's general allegations as well as the following:

> The Taylor Law Firm and Taylor owed duties to Cottage to ensure that the Escrow Funds transferred to the Taylor Law Firm were held in accordance with the terms of the Letter of Intent. The Taylor Law Firm replaced the Pomeroy Law Firm as the Escrow Agent under the Letter of Intent by agreeing to accept the Escrow Funds from the Pomeroy Law Firm's trust account. Further, the Taylor Law Firm and Taylor were on either actual, constructive, or inquiry notice that the funds transferred by the Pomeroy Law Firm were Escrow Funds. TAC at ¶ 98.
>
> The Taylor Law Firm and Taylor were on actual notice of the restrictions on the Escrow Funds based on the suspicious circumstances of The Taylor Law Firm's receipt of nearly $800,000 of Escrow Funds. At a minimum, they were on constructive and/or inquiry notice, including as follows: TAC at ¶ 99.
>
> There were several red flags that would have put a reasonable attorney, especially a real estate attorney, on notice that the Escrow Funds were subject to restrictions: a) a large sum of money ($800,000) was transferred from one law firm's *trust* account into the Taylor Law Firm's *Trust* account (not its *operating* account) – one day after the Taylor Law Firm was retained by BVC – signaling the funds were restricted in some fashion; b) BVC's Maharaj then raced to have the Taylor Law Firm immediately disburse the funds, including $587,000 to BVC; c) Taylor received a message from Cottage's attorney, but

> he admitted he never returned the call; d) the Taylor Law Firm and Taylor never questioned Pomeroy as to the source or nature of the Escrow Funds; e) the Taylor Law Firm and Taylor never asked the Pomeroy Law Firm, and apparently BVC, for any documentation pertaining to the source of the funds; f) the Taylor Law Firm and Taylor never contacted Cottage to confirm whether it authorized the release or disbursement of the Escrow Funds; and g) the Taylor Law Firm and Taylor failed to perform any due diligence or investigation as to the source of the funds or the reason they were being transferred to its Trust Account and the reasons BVC abruptly instructed their release. Further, the Taylor Law Firm and Taylor were in possession of BVC's letter of intent with Trump Entertainment [Exhibit 2 to the TAC] before the Taylor Law Firm disbursed the funds. TAC at ¶ 100 (emphasis in original).

Again, there is no allegation that the Taylor Defendants knew of Cottage's existence, Exhibit 1, or the escrow arrangement set forth therein. Cottage alleges that the Taylor Defendants owed a duty of care to a party they are not alleged to have known existed, to act in accordance with an escrow arrangement (and even become a party to it) that they are not aware exists or had seen, and to handle money in a manner that they do not know is in dispute. This is the height of implausibility on its face for a negligence count and the Court really need not inquire further to dismiss it.

Against a complete lack of any allegations of a single pertinent fact known to the Taylor Defendants which would create any duty of care to Cottage, Cottage throws out allegations that the Taylor Defendants' receipt of the funds from the Pomeroy Law Firm was "suspicious" and should have raised "red flags." The implausibility of these allegations on their face are addressed below, but "suspicious circumstances" and "red flags" do not impart or create duties of care to specific parties to act in accordance with specific agreements, as Cottage requires this Court to accept in or to withstand this Count. No legal precedent exists that requires a party to act on suspicion, reasonable or otherwise, to ferret out duties to otherwise unknown parties *and* to act in accordance with unknown arrangements, all contrary to an existing attorney-client relationship that Cottage acknowledges existed between the Taylor Defendants and BVC in its TAC.

And Cottage's "red flags," even if taken as true, cannot plausibly create a duty to Cottage of the Taylor Defendants to comply with Exhibit 1. The "red flags" are that (a) BVC retained the Taylor Defendants as their lawyers, (b) that BVC had $800,000 wired from another attorneys' trust account to the Taylor Defendants' trust account without any supporting documents; (c) that BVC instructed the Taylor Defendants to disburse the money in short order; (d) that the Taylor Defendants had a non-binding letter of intent between BVC and Trump Entertainment, and (e) that they received a phone message from an attorney for Cottage that they did not return. Cottage contends that these facts should have caused the Taylor Defendants to investigate and perform due diligence, apparently to uncover Cottage's existence *and* Exhibit 1 and hold the money under its terms *and* contrary to the instructions of their own client, BVC, sufficient so that Cottage may sue them to recover money held under Exhibit 1. Again, this is the height of implausibility, particularly given Cottage's admission above that the Taylor Defendants had been retained by BVC, not Cottage. The facts alleged in this count do not support a negligence claim on their face.

And legally, the claims cannot stand either. When a lawyer is representing a client, as Cottage alleges that the Taylor Defendants were representing BVC, "Florida courts have uniformly limited attorney's liability for negligence in the performance of their professional duties to clients with whom they share privity of contract." *Brennan v. Ruffner*, 640 So.2d 143, 145 (Fla. 4th DCA 1994) (Pariente, J) (citing *Angel, Cohen & Rogovin v. Oberon Inv.*, 512 So.2d 192 (Fla. 1987); *Ginsberg v. Chastain*, 501 So.2d 27 (Fla. 3d DCA 1986). "In the legal context, the term 'privity' is a word of art derived from the common law of contracts and used to describe the relationship of persons who are parties to the contract. *Id.* (citing *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So.2d 1378, 1379-89 (Fla. 1993)). The only instances in Florida where the rule of privity has been relaxed is where the plaintiff is an intended third

party beneficiary of the contract. *Id*. In that case, the plaintiff was a shareholder of the corporation client who also argued a "separate duty" was owed to him by the corporation's attorney, but this was rejected as a matter of law as well, noting that the attorney "owes no separate duty of diligence and care . . . absent special circumstances . . . ." *Id*. at 146.

A Florida case has just this year held that "as a general rule, when a transaction involves two interests to be protected, an attorney employed by one of the parties to the transaction cannot be held responsible to the other parties unless it is alleged and proved that the attorney committed some nonnegligent tort such as fraud or theft." *Dingle v. Dellinger*, 39 Fla. L. Weekly D322, 2014 WL 470679, at *4 (Fla. 5th DCA, Case No. 5D13-1725, Feb. 7, 2014). The Taylor Defendants' involvement in this case is alleged in the TAC to have come months after Cottage had determined that BVC lied to it and had been contacting the Pomeroy Law firm for months demanding its money back. TAC at ¶ 21-29. In fact, the TAC makes various allegations that Cottage's own attorneys had been hounding and threatening Pomeroy from January to April of 2013. *Id.* But Cottage now wants to sue the Taylor Defendants for negligence alleging a duty of care owed to *it* after a known adversary, the Pomeroy Defendants, transferred the disputed money to them, whom they acknowledge were BVC's attorneys. An adversary's attorney owes no duty of care to its client's adversary as a matter of law. *Drawdy v. Sapp*, 365 So.2d 461, 462 (Fla. 1st DCA 1978) (wife with her own attorney cannot sue husband's attorney for negligence for botched deed as part of a divorce); *see also Brennan*, 640 So.2d at 146.

A Southern District case has held in this context that the lack of an attorney-client relationship does not insulate an attorney from negligence actions if that duty can separately be imposed based on the facts. *Riggs Nat'l Bank of Washington, D.C. v. Freeman*, 682 F. Supp. 519-20 (S.D. Fla. 1988), relying upon *Zafiris, Inc. v. Moss*, 506 So.2d 27 (Fla. 3d DCA 1987). In that case, however, an attorney for one party in a two-party transaction made affirmative

misrepresentations concerning a property to the other party at a closing. Nothing like this is alleged in this case. This Court should dismiss the negligence count against the Taylor Defendants. A duty of care to an unknown party to act in accordance with an unknown arrangement cannot be imposed on an attorney, especially when, as Cottage has alleged, the attorney represents an adverse party. Generalized allegations of suspicious circumstances and red flags do not create duties of care to unknown entities under unknown agreements.

Count XIV – Breach of Fiduciary Duty

Cottage sues the Taylor Defendants for breach of fiduciary duty on its general allegations and its allegations that:

> The Taylor Law Firm replaced the Pomeroy Law Firm as the Escrow Agent under the Letter of Intent by agreeing to accept the Escrow Funds from the Pomeroy Law Firm's trust account. Further, the Taylor Law Firm and Taylor were on either actual, construction, or inquiry notice that the funds transferred by the Pomeroy Law Firm were Escrow Funds. TAC at ¶ 120.
>
> By undertaking to act as Escrow Agent, the Taylor Law Firm and Taylor owed fiduciary duties to Cottage. The Pomeroy Law Firm undertook the legal obligations: a) to know the provisions and conditions of the Letter of Intent concerning the Escrow Funds; and b) to exercise reasonable skill and ordinary diligence in holding and delivering possession of the Escrow Funds, in strict accordance with the Letter of Intent. They also owed a duty to disclose all material facts to Cottage. TAC at ¶ 121.
>
> The Taylor Law Firm and Taylor breached their fiduciary duties by: a) failing to comply with the terms of the Escrow Agreement and Letter of Intent; ii) disbursing approximately $800,000 of the Escrow Funds without notice to Cottage, without Cottage's approval, and over its express objections; iii) failing to disclose all material facts (including that they intended to disburse $800,000 of the Escrow Funds and intended to transfer the balance to another attorney as directed by BVC; iv) concealing that they had disbursed $800,000 of the Escrow Funds; v) failing to take remedial measures to secure the return of the Escrow Funds; vi) failing to question Pomeroy as to the source or nature of the Escrow Funds; vii) failing to ask the Pomeroy Law Firm, and apparently BVC, for any documentation pertaining the source of the funds; viii) failing to contact Cottage to confirm whether it authorized the release or disbursement of the Escrow Funds; and ix) failing to perform any due diligence or investigation as to the source of the funds or the reason they were being transferred to its Trust Account and the reasons BVC abruptly instructed the disbursement of the Escrow Funds to BVC and third parties (but not Cottage). TAC at ¶ 122.

> Further, the Taylor Law Firm and Taylor were in possession of BVC's letter of intent with Trump Entertainment before the Taylor Law Firm disbursed funds, so they were on actual, constructive, or inquiry notice the funds were part of a real estate transaction. TAC at ¶ 123.
>
> In addition, several red flags existed that the funds were subject to restrictions including: a) a large sum of money ($800,000) was transferred from one law firm's *trust* account into the Taylor Law Firm's *Trust* account (not its *operating* account) – one day after the Taylor Law Firm was retained by BVC – signaling the funds were restricted in some fashion; b) BVC's Maharaj rushed to have the Taylor Law Firm immediately disburse the funds, including $587,000 to BVC; and c) Taylor received a phone message from Cottage's attorney, but he admittedly never returned the call. TAC at ¶ 124 (emphasis in original).

Factually, this count is implausible on its face just like the negligence count. The Taylor Defendants are not alleged to have ever received Exhibit 1 so they can in no way be charged with a duty to comply with its terms, "replace" a party thereto, or "undertake" to act in accordance therewith. Conclusorily alleging that the Taylor Defendants were on "actual, constructive, or inquiry" notice of Exhibit 1 is not sufficient under *Twombly* and *Iqbad*. Cottage does not allege that the Taylor Defendants even knew Cottage existed, so they cannot possible owe any fiduciary duty to Cottage, much less to act in accordance with that duty under the terms of an arrangement they do not know exists. Cottage once against relies on Exhibit 2 which makes no mention of anything relating to Cottage, the Escrow Funds, or Exhibit 1. And as pointed out in the negligence section above, the Taylor Defendants' appearance in this case is not alleged to have occurred until *months* after Cottage had become adverse to BVC and Pomeroy, and their appearance is only alleged to have come as BVC's attorney. No facts alleged support any fiduciary duty, and certainly not to a client's adversary.

And the same "red flags" are alleged as in the negligence count to somehow create not only a duty, but a duty to act in accordance with a specific agreement. But as set forth above, "red flags," even if taken as true, cannot create fiduciary duties to unknown parties to act in accordance with an arrangement of which they have no knowledge. No such thing as an

"inquiry" or a "constructive" fiduciary duty exists. Wiring money between trust accounts for a client—which is all Cottage alleges—does not indicate that the funds are subject to restriction, and it certainly does not reflect the existence of Cottage or Exhibit 1, even coupled with a "phone message." Neither does accepting money for a client and then, even in short order, disbursing it at the client's instruction. And Cottage attacks the flimsy and unbinding nature of Exhibit 2 in its general allegations to show BVC's attempts to defraud it, but at the same time, claims the Taylor Defendants' possession of Exhibit 2 is supposed to place them on notice that the funds were restricted and the Taylor Defendants should accordingly hold them contrary to the instructions of their own client.

To state a cognizable claim for breach of fiduciary duty under Florida law, a plaintiff must adequately allege: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages which proximately result from such breach." *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). While Cottage makes the formulaic allegations that such a duty existed, no facts support such at all. Again, now Florida Supreme Court Justice Pariente held also in *Brennan* that in a circumstance of a business transaction between parties with separate interests, there a corporation and a shareholder, an inherent conflict of interest exists that precludes as a matter of law an attorney for one party to owe any fiduciary duty to the other absent evidence of active concealment. 640 So.2d at 147. Cottage alleges that the Taylor Defendants were retained by BVC and they were already at odds with the Pomeroy Law firm and felt duped by BVC before the involvement of the Taylor Defendants.

Under Florida law, "[a]n *implied* fiduciary duty may be found based on special circumstances surrounding the transaction and the relationship of the parties, *see Capital Bank v. MVB, Inc.*, 644 So.2d 515 (Fla. 3d DCA 1994), and may be found when confidence is reposed by one party and a trust accepted by the other. *Maxwell v. First United Bank*, 782 So.2d 931, 933-

934 (Fla. 4th DCA 2001); *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176 (S.D. Fla. 1991 (fiduciary relationship is recognized under Florida law when there is a showing of dependency by one party and some undertaking by the other party to advise, counsel and protect that party). In *Capital Bank*, the Third District Court of Appeal held that 'special circumstances' gave rise to a fiduciary duty where the defendant bank stepped out of its typical role as lender and had become an investment advisor to the plaintiff." *Court Appointed Receiver of Lancer Offshore, Inc. v. Citgo Group Ltd.*, 2008 WL 926513, at *4 (S.D. Fla., Case No. 05-60080-Civ, March 31, 2008). With no allegations of dependency, or that the Taylor Defendants stepped out under its contract, a claim for breach of fiduciary duty is not alleged. *Id.*

"The term 'fiduciary or confidential relation' is a very broad one. It exists, and relief is granted, in all cases in which influence has been acquired and abused, and in which confidence has been reposed in one, who in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So.2d 1328, 1332 (Fla. 2d DCA 1985). A benefit must flow to the defendant resulting from the breach, not just damage to the plaintiff, where a fiduciary duty is being imposed. *Id.* at 1333. Once again, the TAC contained no allegations of this sort at all. All but $10,000 for fees is alleged to have gone back to BVC or to its vendors at BVC's behest. The Court should dismiss this count.

<u>Count XV ("Fraudulent Transfer")</u>

Cottage attempts to state a cause of action under Fla. Stat. §§ 726.105(a) and 726.106. Fla Stat. § 726.105(a) provides that "[a] transfer made or obligation incurred by a debtor is fraudulent to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) [w]ith the actual intent to hinder, delay, or defraud any creditor of the debtor[.]" Fla. Stat. §

726.106 provides that: "(1) [a] transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred of the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the that time or the debtor became insolvent as a result of the transfer or obligation. (2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent."

While Cottage alleges it is a creditor, it does not allege of whom it is a creditor among the Defendants, and as far as transfers, simply states that "[the Defendants] transferred Cottage's Escrowed Funds with the intent to hinder, delay, or defraud Cottage, as prohibited by §726.105(1)(a)" and that they "all" received disbursements. The count does not allege any specific transfer of funds that it seeks to set aside from any defendant, and certainly not the Taylor Defendants. On the face of the TAC, Cottage only alleges that the Taylor Defendants received $10,000 of the sums they are trying to recover. The rest is alleged in the TAC to have been transferred into the Taylor Defendants' trust account and out again to BVC. A law firm does not own funds it receives into a trust account. This count does not allege what sum it seeks to recover from the Taylor Defendants or what relief it seeks against them. The Court should dismiss this Count with leave for Cottage to re-plead it to allege what specific funds it seeks from each defendant under § 726.105.

<u>Count XVII ("Constructive Trust")</u>

Finally, Cottage alleges that all defendants "made express and implied promises to hold the Escrow Funds, thereby creating a confidential relationship[,] and that [the Taylor Defendants] were fiduciaries to Cottage." TAC at ¶ 142. Cottage makes no allegations at all

that either of the Taylor Defendants even knew Cottage existed, apart from a single unreturned phone call, to be in a position of making any sort of promise—express or implied—to them. The only facts alleged by Cottage are that the Taylor Defendants had Exhibit 2, which they claim should have placed the Taylor Defendants on notice that the funds may have been subject to restriction. The content of Exhibit 2 renders this implausible. The mere conclusions as to "confidential" and "express and implied promises" and "fiduciaries" are entitled to no weight or presumption of truth under *Twombly* and *Iqbad*. The Court should dismiss this count.

**IV. The Taylor Defendants Are Alleged To Be BVC's Counsel.**

Cottage's mix of allegations in each count admits the creation of an attorney-client relationship between the Taylor Defendants and BVC that arose *after* Cottage became an adversary of BVC. TAC at ¶ 32 ("Pomeroy took the position that there was no 'clear escrow agreement' and revealed—for the first time—that he transferred the Escrow Funds on March 22, 2013 to another one of BVC's attorney's law firms, the Taylor Law Firm."); ¶ 100 (" . . . one day after the Taylor Law Firm was retained by BVC . . ."; ¶ 124 (same). However, the basis of many of Cottage's counts seek to impose liability on the Taylor Defendants for taking action required by them under the Florida Rule of Professional Conduct for their client when Cottage cannot even allege the Taylor Defendants knew who they were. The basis for Cottage's claims is contrary to the adversary system and the Florida Bar Rules of Professional Conduct.

For example, Rule 4-4.1 requires that in the course of representing a client that the lawyer shall not knowingly "[m]ake a false statement of material fact or law to a third person; . . . with others on a client's behalf." Cottage does not allege the Taylor Defendants did anything of the sort, yet seek almost $1 million in damages. Rule 4-4.1 has been construed to mean that "[b]ecause of the attorney-client privilege, and the attorney's fiduciary duty owed to a client, an attorney has no affirmative duty to inform an opposing party or attorney as to the existence of

relevant facts. *Schlapper v. Maurer*, 687 So.2d 982, 985 (Fla. 5th DCA 1997). And, an attorney has no duty to investigate a client's financial dealings, which is the basis for their claims against the Taylor Defendants (as factually absurd as those allegations are). *See United States v. Del Carpia-Contrina*, 733 F. Supp. 95, 99 n. 10 (S.D. Fla. 1990) (duty to investigate client even in presence of red flags "incompatible" with the nature of the attorney-client relationship).

The gravamen of Cottage's entire claim against the Taylor Defendants is that they had a duty to investigate BVC's financial dealings and the source of its funds and act contrary to their clients' instructions and in favor of Cottage, BVC's adversary. And with respect to trust accounts, Cottage alleges throughout the TAC that the Taylor Defendants received the money in question into its trust account and disbursed it at the direction of BVC, its client, as some kind of wrongful activity. Rule 5.1-1(b) ("Trust Accounts—Application of Trust Funds or Property to Specific Purpose") requires that "[m]oney or other property entrusted to an attorney for a specific purpose, including advances for fees, cost, and expenses, is held in trust and must be applied only to that purpose . . . and refusal to account for and deliver over such property upon demand shall be deemed a conversion." *See also Kenet v. Bailey*, 679 So.2d 348, 350 (Fla. 3rd DCA 1996) ("When an attorney receives money from his client to place into the attorney's trust account for client's purpose, a fiduciary relationship is established and a failure to return the money on demand (or to use it as instructed) carries with it substantial potential consequences.")

## V. Conclusion

For all of the foregoing reasons, the Court should dismiss Cottage's TAC. With the exception of the fraudulent transfer count, the other counts are fatal in their face and as a matter of law and no leave to amend should be granted.

**GREENSPOON MARDER, P.A.**

/s/ G. Steven Fender
G. STEVEN FENDER, ESQ.
Florida Bar No. 060992
Email: steven.fender@gmlaw.com
250 S. Australian Ave., Suite 700
West Palm Beach, FL 33401
Telephone (561) 838-4509
Attorneys for Defendants Alan B. Taylor
and Alan B. Taylor & Associates, P.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the parties listed below, and in the manner indicated on this 25th day of April, 2014.

**Electronic Mail Notice List**
The following are those who are currently on the list to receive e-mail notices for this case.

- **Scott Lawrence Cagan**
  scott.cagan@gray-robinson.com,cortney.kaiserman@gray-robinson.com,christina.broder@gray-robinson.com
- **Jude Christopher Cooper**
  jude@pcpalaw.com
- **George Steven Fender**
  steven.fender@gmlaw.com,lauren.baio@gmlaw.com,efileu1113@gmlaw.com,steven.fender@yahoo.com
- **Cortney Robyn Kaiserman**
  cortney.kaiserman@gray-robinson.com,christina.broder@gray-robinson.com
- **Mark David Nichols**
  mark@pcpalaw.com,monica@pcpalaw.com,loriq@pcpalaw.com
- **Jon Polenberg**
  jon@pcpalaw.com,monica@pcpalaw.com
- **Gregg Joseph Pomeroy**
  pomeroylaw@aol.com
- **Jason Elliot Slatkin**
  jslatkin@slatkinreynolds.com,imalcolm@slatkinreynolds.com
- **Alan Brent Taylor**
  ataylororlando@gmail.com

**Manual Notice :**

Rohan Kuldip
619 N. Pine Hills Road
Orlando, FL 32808